UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS (SPRINGFIELD)

IN RE:

Brian T. Desrosiers,
Debtor.

CitiMortgage, Inc.,

VS.

Brian T. Desrosiers

CHAPTER 7
CASE NO. 17-30828-EDK

<u>MOTION FOR RELIEF FROM STAY</u>

To the Honorable Elizabeth D. Katz:

CitiMortgage, Inc., your moving party in the within Motion, hereby requests that the Court grant relief from the Automatic Stay imposed by 11 U.S.C. §362 and respectfully represents:

1.    The movant has a mailing address of 100 Technology Drive, MS 730, O'Fallon, MO 63304.

2.    The debtor has a mailing address of 1801 Northampton St., Apt 3, Holyoke, MA 01040.

3.    On September 29, 2017, the debtor filed a petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.

4.    The movant is the holder of a first mortgage on real estate in the original amount of $114,900.00 given by Brian T. Desrosiers to Mortgage Electronic Registration Systems, Inc. on or about June 21, 2016. Said mortgage is recorded in the Hampden County Registry of Deeds at Book 21228, Page 144 and covering the premises located at 45 Greenleaf St, Chicopee, MA 01013. A copy of the mortgage, note and assignment are annexed hereto and marked as Exhibit A.

5.    Said mortgage secures a note given by Brian T. Desrosiers to Citibank, N.A. in the original amount of $114,900.00. CitiMortgage, Inc. services the loan on the property referenced in this Motion for Relief. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of CitiMortgage, Inc.. ("Noteholder"). Noteholder directly or through an agent, has



possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly indorsed. Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan.

6.    There is no other collateral securing the obligation.

7.    Said mortgage was subject to the following assignments:

Mortgage Electronic Registration Systems, Inc. to CitiMortgage, Inc., recorded on January 5, 2017, in Book No. 21522, at Page 11

8.    There is no known Declaration of Homestead recorded.

9.    As of February 28, 2018, approximately $113,454.17 in principal, interest, late fees and other charges was due with regard to CitiMortgage, Inc.'s note and mortgage.

10.    There are no other known encumbrances on the property.

11.    According to the Broker's Price Opinion, the fair market value of the subject property is $150,000.00. The liquidation value of the subject property is $139,816.00, calculated as the fair market value less a reasonable realtor's fee (6%); deed stamps $684.00 and anticipated costs incurred for a real estate closing of $500.00. A copy of the Broker's Price Opinion is annexed hereto and marked as Exhibit B.

12.    The note and mortgage are in default for the December 1, 2017 payment, and all payments thereafter plus reasonable attorney's fees and costs and other charges incurred by the movant.

13.    The movant seeks relief from stay as a secured creditor to enforce its rights under its loan documents and applicable law. In support thereof, the movant states that it is entitled to relief:

I.    Pursuant to 11 U.S.C. §362 (d)(1) for cause on the basis that the debtor is in default on said contractual obligations, the primary purpose of a Chapter 7 proceeding is to liquidate the assets of the debtor;

WHEREFORE, the movant prays that it, and its successors and/or assigns, be granted relief from the automatic stay for the purpose of: (i) exercising its rights under its agreements with the debtor and under applicable law, including, without limitation, taking possession of the mortgaged premises and/or foreclosing

or accepting a deed in lieu of foreclosure of its mortgage on said premises; (ii) preserving its right to seek any

deficiency to the extent permitted by state and federal law, including 11 U.S.C. §524(a); (iii) bringing such

actions, including, without limitation, proceedings, as are permissible by law; and (iv) that the Court order

such other and further relief as may be just and proper.


Respectfully submitted,

CitiMortgage, Inc.,
By its Attorney

/s/ Jason J. Giguere _____
Jason J. Giguere
BBO#  667662
Harmon Law Offices, P.C.
PO Box 610389
Newton Highlands, MA 02461
(617)558-0500
mabk@harmonlaw.com

Dated: March 14, 2018

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS (SPRINGFIELD)

| | |
|---|---|
| IN RE: | Case No. 17-30828-EDK |
| Brian T. Desrosiers, | Chapter 7 |
| Debtor. | |

CERTIFICATE OF SERVICE

I, Jason J. Giguere, state that on March 14, 2018, I electronically filed the foregoing document with the United States Bankruptcy Court for the District of Massachusetts on behalf of CitiMortgage, Inc. using the CM/ECF System.  I served the foregoing document on the following CM/ECF participants:

Susan Williams

Gary M. Weiner

Richard T. King

I certify that I have mailed by first class mail, postage prepaid, the documents electronically filed with the Court on the following non CM/ECF participants:

Brian T. Desrosiers
45 Greenleaf St
Chicopee, MA 01013

Brian T. Desrosiers
1801 Northampton St. Apt. 3
Holyoke, MA 01040

City Hall Annex
Collector's Office
City of Chicopee
274 Front Street 2nd Floor
Chicopee, MA 01013

PRA Receivables Management, LLC
As servicer for Synchrony Bank
PO Box 41021
Norfolk, VA 23541

Respectfully submitted,
CitiMortgage, Inc.,
By its Attorney

/s/ Jason J. Giguere
Jason J. Giguere
BBO#  667662
Harmon Law Offices, P.C.
PO Box 610389
Newton Highlands, MA 02461
(617)558-0500
mabk@harmonlaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS (SPRINGFIELD)

| | |
|---|---|
| IN RE: | Case No. 17-30828-EDK |
| | Chapter 7 |
| Brian T. Desrosiers, | |
| | |
| Debtor. | |

### Order Granting CitiMortgage, Inc. Relief
### From The Automatic Stay and Leave to Foreclose Mortgage

This matter has come before the Court, and after full consideration, and no objection having been filed after proper notice, it is hereby ordered that CitiMortgage, Inc., its Successors and/or Assigns, Motion for Relief From Automatic Stay is hereby granted and the stay imposed by 11 U.S.C. §362 is hereby terminated and it may proceed to foreclose or accept a deed in lieu of foreclosure of the mortgage given by Brian T. Desrosiers to Mortgage Electronic Registration Systems, Inc. dated June 21, 2016. Said mortgage is recorded in the Hampden County Registry of Deeds at Book 21228, Page 144 and covering the premises located at 45 Greenleaf St, Chicopee, MA 01013.   CitiMortgage, Inc., its Successors and/or Assigns, may exercise its rights under said Mortgage, including preserving its right to seek any deficiency to the extent permitted by state and federal law, including 11 U.S.C. §524(a), and may bring such actions, including, without limitation, eviction proceedings, as are permissible by law, all as set forth in its Motion.



Honorable Elizabeth D. Katz
United States Bankruptcy Judge

17-30828-EDK



# Exhibit A

**Please Note:**
**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal And Private Information**

**Any Documents Marked As A True And Correct Copy**
**Have Also Been Redacted For This Purpose**

# REDACTED

## Note

| June 21, 2016 | Springfield | Massachusetts |
|---|---|---|
| *[Date]* | *[City]* | *[State]* |

45 GREENLEAF ST, Chicopee, MA  01013
*[Property Address]*

**1.  Borrower's Promise to Pay**
    In return for a loan that I have received, I promise to pay U.S. $ 114,900.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Citibank, N.A.

I will make all payments under this Note in the form of cash, check or money order.
    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  Interest**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     2.875  %.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  Payments**
    **(A) Time and Place of Payments**
    I will pay principal and interest by making a payment every month.
    I will make my monthly payment on the     1st    day of each month beginning on     August 1, 2016    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on July 1, 2046        , I still owe amounts under this Note. I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at CitiMortgage, Inc.  1000 Technology Drive, O'Fallon, MO  63368-2240
                                                    or at a different place if required by the Note Holder.

    **(B) Amount of Monthly Payments**
    My monthly payment will be in the amount of U.S. $ 476.71

**4.  Borrower's Right to Prepay**
    I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
    I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3200 1/01
VMP5N (1302).01
Page 1 of 3

*B.T.D.*

**5. Loan Charges**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. Borrower's Failure to Pay as Required**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        fifteen        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        3.000 % of my overdue payment of principal and interest.

I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. Giving of Notices**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. Obligations of Persons Under this Note**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

---

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3200 1/01
VMP5N (1302).01
Page 2 of 3

*B.T.D.*

**9. Waivers**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. Uniform Secured Note**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Brian T. Desrosiers_ _____ (Seal)
Brian T. Desrosiers                                   -Borrower

*(Sign Original Only)*

Pay to the order of
without recourse on us
Citibank, N.A.

Harrison Luval, Vice President
Citibank, N.A.

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Loan origination organization Citibank, N.A.
NMLS ID 412915
Loan originator Alejandro DeLaRosa
NMLS ID 738183

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3200 1/01
VMPSN (1302) 01
Page 3 of 3

## ADDENDUM TO NOTE

### INTEREST RATES AND INTEREST CHARGES

THIS INTEREST RATE AND INTEREST CHARGES ADDENDUM is made this __21st__ day of _____June, 2016_____, and is incorporated into and shall be deemed to amend and supplement the note (the Note) of the same date given by the undersigned (the Borrower) to Citibank, N.A. (the Lender).

In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Interest Rates and Interest Charges. Lender is a national bank. As authorized by 12 U.S.C. § 85, provisions related to interest rates and interest charges shall be governed by federal law and by the laws of the state of South Dakota, where Lender is located.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum.

_Brian T. Desrosiers_____ (Seal)
Brian T. Desrosiers                                    -Borrower

*(Sign Original Only)*

(Settlement Agent:  This Addendum to Note must be returned to Lender with the Note)

MB5103  Interest Rate and Interest Charges          Page 1 of 1                        Rev. 01/2012

Return To:
Citibank, N.A.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

**REDACTED**

Prepared By:
Citibank, N.A.
Jennifer Gilkerson
1000 Technology Drive
MS 945
O' Fallon, MO  63368-2240

Bk  21228  Pg144   #34829
06-21-2016 @ 01:10p

Property Address:
45 GREENLEAF ST
Chicopee, MA  01013

---

## Mortgage

MIN ████████████

### Definitions

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated June 21, 2016          , together with all Riders to this document.

(B)  "Borrower" is Brian T. Desrosiers, An Unmarried Man

Borrower is the mortgagor under this Security Instrument.

(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D)  "Lender" is Citibank, N.A.

Lender is a Corporation

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (1302).00
Page 1 of 18

*B.T.D.*

organized and existing under the laws of the United States
Lender's address is 1000 Technology Drive, O'Fallon, MO 63368-2240

(D-1) **"Mortgage Broker"** is Neighborhood Assistance Corporation of America

Mortgage Broker's post office address is 241 Main Street, Hartford, 06106

and Mortgage Broker's license number is

(D-2) **"Mortgage Loan Originator"** is Alejandro DeLaRosa/▮▮▮▮▮
Mortgage Loan Originator's post office address is 1000    Technology    Drive    O'Fallon,    MO
63368-2240
and Mortgage Loan Originator's license number is ▮▮▮▮▮

(E) **"Note"** means the promissory note signed by Borrower and dated June 21, 2016
The Note states that Borrower owes Lender One Hundred Fourteen Thousand Nine Hundred

Dollars (U.S. $114,900.00          ) plus interest. Borrower has promised
to pay this debt in regular Periodic Payments and to pay the debt in full not later than July 1, 2046

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in
the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Schedule "A" |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable
final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments
and other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (1302).00
Page 2 of 18

*B.T. I*

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services
Form 3022 1/01
VMP6A(MA) (1302).00
Page 3 of 18

*B.T.D.*

**Transfer of Rights in the Property**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County                                          of Hampden                                          :

        *[Type of Recording Jurisdiction]*                    *[Name of Recording Jurisdiction]:*
See Schedule/Exhibit A

Parcel ID Number:                                          which currently has the address of
45 GREENLEAF ST                                                                        *[Street]*
Chicopee                              *[City]* , Massachusetts 01013-        *[Zip Code]*
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                    Form 3022 1/01
VMP ®                                                                                                                                  VMP6A(MA) (13022).00
Wolters Kluwer Financial Services                                                                                                    Page 4 of 18

*B.T.W.*

Uniform Covenants. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and
any prepayment charges and late charges due under the Note. Borrower shall also pay funds for
Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall
be made in U.S. currency. However, if any check or other instrument received by Lender as
payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may
require that any or all subsequent payments due under the Note and this Security Instrument be
made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)
certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn
upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d)
Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at
such other location as may be designated by Lender in accordance with the notice provisions in
Section 15. Lender may return any payment or partial payment if the payment or partial payments
are insufficient to bring the Loan current. Lender may accept any payment or partial payment
insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its
rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply
such payments at the time such payments are accepted. If each Periodic Payment is applied as of its
scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such
unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do
so within a reasonable period of time, Lender shall either apply such funds or return them to
Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance
under the Note immediately prior to foreclosure. No offset or claim which Borrower might have
now or in the future against Lender shall relieve Borrower from making payments due under the
Note and this Security Instrument or performing the covenants and agreements secured by this
Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all
payments accepted and applied by Lender shall be applied in the following order of priority: (a)
interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.
Such payments shall be applied to each Periodic Payment in the order in which it became due. Any
remaining amounts shall be applied first to late charges, second to any other amounts due under this
Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment
and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any
payment received from Borrower to the repayment of the Periodic Payments if, and to the extent
that, each payment can be paid in full. To the extent that any excess exists after the payment is
applied to the full payment of one or more Periodic Payments, such excess may be applied to any
late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then
as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under
the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (1302).00
Page 5 of 18

*B.T.O.*

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®                                                                                              Form 3022 1/01
Wolters Kluwer Financial Services                                                                  VMP6A(MA) (1302).00
                                                                                                   Page 6 of 18

B.T.D.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

MASSACHUSETTS - Single Family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (1302).00
Page 7 of 18

B.T.D.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (1302).00
Page 8 of 18

$^i$ B.T.D.

such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (1302).00
Page 9 of 18

B.T.G.

its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.    **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance. Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3022 1/01
VMP ®                                                                                                      VMP6A(MA) (1302).00
Wolters Kluwer Financial Services                                                                        Page 10 of 18

*B.T.O.*

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)    Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)    Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.    **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (1302).00
Page 11 of 18

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (1302).00
Page 12 of 18

B.T.D.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                 Form 3022 1/01
VMP ®                                                                                             VMP6A(MA) (1302).00
Wolters Kluwer Financial Services                                                                 Page 13 of 18

*B.T. 9.*

Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.   **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.   **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18.   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.   **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and

MASSACHUSETTS - Single Family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

FORM 3022 1/01
VMP6A(MA) (1302).00
Page 14 of 18

*B.T.D*

valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.    **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.    **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (1302).00
Page 15 of 18

*B.T.J.*

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

22.  **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (1302).00
Page 16 of 18

B.T.O.

23.    **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.    **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

*Brian T. Desrosiers* _____    (Seal)
                                             -Borrower
Brian T. Desrosiers
(Sign Original Only)

☐  Refer to the attached *Signature Addendum* for additional parties and signatures.

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services
                                                                Form 3022 1/01
                                                                VMP6A(MA) (1302).00
                                                                Page 17 of 18

Acknowledgment
State of _Massachusetts_
County of _Hampden_
On _June 31, 2019_, before me, the undersigned notary public, personally appeared

_Brian T. Desrosiers_

proved to me through satisfactory evidence of identification, which were _MASS. DMV. UC_
to be the person(s) whose name(s) is/are signed on the preceding or attached document, and acknowledged
to me that he/she/they signed it voluntarily for its stated purpose.

_Notary Public_

My commission expires: _5/4/18_

LAURA M. MARINO
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
May 4, 2018

Loan origination organization Citibank, N.A.
NMLS ID 412915
Loan originator Alejandro DeLaRosa
NMLS ID 738183

MASSACHUSETTS - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6A(MA) (1302).00
Page 18 of 18

_B T. D._

EXHIBIT A

The land in said Chicopee, bounded and described as follows:

Beginning at an iron pin on the Southerly side of Magnolia Street at the Northwesterly corner of Lot #7 (seven) as shown on a plan of Highland Park dated June 19, 1940 and recorded in Hampden County Registry of Deeds, Book of Plans 19, Page 22; and running thence

WESTERLY along the Southerly side of Magnolia Street, fifty and 63/100 (50.63) feet to a point; thence

WESTERLY, SOUTHWESTERLY and SOUTHERLY in an arc with a radius of twenty-three and 56/100 (23.56) feet along the curved line forming the intersection of the Southerly side of  Magnolia Street  the Easterly side of Greenleaf Street, thirty-nine and 82/100 (39.82) feet to a point; thence

SOUTHERLY along the Easterly side of Greenleaf Street, forty-six and 87/100 (46.87) feet to an iron pin; thence

EASTERLY in a line forming a right angle with the last course, seventy-six and 66/100 (76.66) feet to iron pin in the Westerly line of said Lot #7 (seven); and thence

NORTHERLY along said Westerly line of said Lot #7 (seven), sixty-four and 18/100 (64.18) feet to the point of beginning.

MEANING and intending to convey and hereby conveying the Northerly portion of Lot #6 (six) as shown on a Plan Showing Subdivision of Lot No. 6 dated August 1964, drawn by Sebastian F. Beauchamp, Reg. Land Surveyor, recorded in Hampden County Registry of Deeds.

Being the same premises conveyed to mortgagor by deed recorded herewith.


DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS

Bk 21522 Pg11 #605
01-05-2017 @ 08:36a

Instrument Prepared By:
CITIMORTGAGE, INC
Laura Jones
1000 TECHNOLOGY DRIVE, MS
321
O'FALLON , MO 63368-2240

**REDACTED**

Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE , CA 91209-9071
Phone #: 800-331-3282

---

## ASSIGNMENT OF MORTGAGE

MERS SIS # [REDACTED]   MIN: [REDACTED]

Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Citibank, N.A., its successors and assigns , 'Assignor', with a Current Beneficiary Address: P.O. Box 2026, Flint, MI, 48501-2026 , is holder of that certain mortgage

From: Brian T. Desrosiers

Dated: 06/21/2016 recorded with the Hampden County as Book: 21228 Page: 144 .
Originally Recorded on: 06/21/2016

and hereby assigns said mortgage to CitiMortgage, Inc. whose address is 1000 Technology Drive, O'Fallon, MO, 63368 without recourse.

Township: Chicopee
Property Address: 45 Greenleaf St, Chicopee, MA, 01013
Original Beneficiary: Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Citibank, N.A., its successors and assigns

IN WITNESS WHEREOF, Assignor has caused these presents to be signed, in its name and behalf by Stephanie Goeckner this 12/28/2016 .

Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Citibank, N.A., its successors and assigns



By: _____
Name : Stephanie Goeckner
Title: Assistant Secretary

STATE OF MISSOURI, ST. CHARLES COUNTY

On 12-28-16 before me, the undersigned, a notary public in and for said state, personally appeared Stephanie Goeckner, Assistant Secretary of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Citibank, N.A., its successors and assigns personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

TONJA BROOKS
Notary Public - Notary Seal
State of Missouri
Commissioned for St Louis County
My Commission Expires: July 25, 2020
Commission Number: 12372473

Notary Public Tonja Brooks

Commission Expires: 07/25/2020

Page # 1   RPY Ref# [REDACTED]   Hampden Coun

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS
E-RECORDED

# Exhibit B

**Please Note:**
**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal And Private Information**

**Any Documents Marked As A True And Correct Copy**
**Have Also Been Redacted For This Purpose**

**Clear Capital®**

Drive-by, Residential Evaluation
**45 Greenleaf St, Chicopee, MA 01013**

Please Note  This report was completed with the following assumptions: Market Approach: **Market Value**, Marketing Time: **Typical**. Important additional information relating to this report, including use and restrictions, is contained in an attached addendum which is an integral part of this report.

| | | | | |
|---|---|---|---|---|
| **Address** | 45 Greenleaf St, Chicopee, MA 01013 | **Order ID** | | **Property ID** | |
| **Inspection Date** | 10/05/2017 | **Date of Report** | 10/10/2017 | **Effective Date** | 10/05/2017 |
| **Loan Number** | | **APN** | | | |
| **Borrower Name** | BRIAN DESROSIERS | **County** | HAMPDEN | | |

**Tracking IDs**

| | |
|---|---|
| **Order Tracking ID** | |
| **Tracking ID 1** | |
| **Tracking ID 2** | -- |
| **Tracking ID 3** | Y |

**Subject Photo**



**Value Conclusions**

### Final As Is Value
# $150,000

| | |
|---|---|
| Repaired Value | **$150,000** |
| Suggested List As Is | **$152,900** |
| Suggested List Repaired | **$152,900** |
| 30 Day Value | **$140,000** |

## I. General Conditions

| | | | |
|---|---|---|---|
| Property Type | SFR | Assessed Value | $105,400 |
| Zoning | res | Annual Property Tax | $1,824 |
| Data Source (Zoning) | Public Records | Economic/Functional Obsolescence | No |
| Current Use | SFR Det | Environmental Issues | No |
| Projected Use | SFR Det | **Interior Condition Assumption Attestation** | |
| Occupancy | Occupied | | |
| Property Condition | Average | | |
| Estimated Exterior Repairs | $0 | | |
| Estimated Interior Repairs | $0 | | |
| Total Estimated Repairs | $0 | | |
| HOA | No | | |

The preparer assumes that the condition of the interior of the improvements being valued is the same as the exterior condition of the property unless otherwise noted in the report. Acceptable alternative sources would include Multiple Listing Service data, Assessor public records, online resources, prior interior inspections, etc., as long as those sources are determined to be reliable by the preparer and not in direct conflict with anything visually observed at the time of inspection.

**Condition Comments**

This is a vinyl sided ranch styled home. This has a one car detached garage. This has average curb appeal. The quality of construction is average. This is not a busy street, but off of a busy area. There were not any repairs needed, based on the exterior. This is smaller than most of the homes in the area, the style and type of home conforms, the size does not. This is on a corner lot.

## II. Subject Sales & Listing History

| Current Listing Status | | Not Currently Listed | | Data Source | | Public Records |
|---|---|---|---|---|---|---|

| Date Listed | Date Sold | List Price | Sale Price | Notes |
|---|---|---|---|---|
| -- | -- | -- | -- | -- |
| -- | -- | -- | -- | -- |
| -- | -- | -- | -- | -- |
| -- | -- | -- | -- | -- |

## III. Neighborhood & Market Data

| Location Type | Suburban |
|---|---|
| Local Economy | Stable |
| Demand/Supply | In Balance |
| Neighborhood Sales Price Range | Low: $65,000<br>High: $381,000<br>Predominant: $183,771 |
| Market Trend | Remained stable in the last 6 months. |
| Normal Marketing Days | <180 |

**Neighborhood Comments**

This is in a convenient area. This is close to most amenities. This is close to the Springfield city line. There are shops and stores within 3 miles of the subject. There are highways within 5 miles of the subject. There are schools within 5 miles of the subject. There are REO homes in the area, of the current 149 listings, 27 are REO homes. There are very few boarded homes in the area, it is uncommon. There is a mix of single and multi family homes in the area. There is a park within 2 miles of the subject.

## IV. Current Listings

| | Subject | Listing 1 | Listing 2 * | Listing 3 |
|---|---|---|---|---|
| Street Address | 45 Greenleaf St | 460 East St. | 93 Wildermere St | 46 Thornwood St |
| City, State | Chicopee, MA | Chicopee, MA | Chicopee, MA | Chicopee, MA |
| Zip Code | 01013 | 01020 | 01020 | 01020 |
| Datasource | Tax Records | MLS | MLS | MLS |
| Miles to Subj. | -- | 1.88 ¹ | 2.00 ¹ | 1 20 ¹ |
| List Price $ | -- | $147,000 | $149,900 | $149 900 |
| DOM · Cumulative DOM | -- · -- | 15 · 28 | 2 · 8 | 24 · 74 |
| Original List Price $ | $ | $152,000 | $149 900 | $154,900 |
| Age (# of years) | 66 | 87 | 50 | 61 |
| Condition | Average | Average | Average | Average |
| Sales Type | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| Style/Design | 1 Story ranch | 1 Story bungalow | 1 Story ranch | 1 Story ranch |
| # Units | 1 | 1 | 1 | 1 |
| Living Sq. Feet | 779 | 936 | 952 | 936 |
| Bdrm · Bths · ½ Bths | 2 · 1 | 3 · 1 | 3 · 1 | 3 · 1 |
| Total Room # | 4 | 5 | 5 | 5 |
| Garage (Style/Stalls) | Detached 1 Car | Attached 1 Car | Attached 1 Car | None |
| Basement (Yes/No) | Yes | Yes | Yes | Yes |
| Basement (% Fin) | 0% | 75% | 0% | 0% |
| Basement Sq. Ft. | 779 | 936 | 952 | 936 |
| Pool/Spa | -- | -- | -- | -- |
| Lot Size | 0.12 acres | .15 acres | .17 acres | .17 acres |
| Other | none | porch, fence | none | fence |

**Listing Comments** Why the comparable listing is superior or inferior to the subject

**Listing 1**  Fair Market Listing. Similar location, style, size and condition as subject. This is over one mile, there are limited comparisons. This has a garage. This has a finished basement. This has a fenced yard. This has a porch. This has sprinkler system.

**Listing 2**  Fair Market Listing. Similar location, style, size and condition as subject. This is over one mile, there are limited comparisons. This has an oversized garage.

**Listing 3**  Fair Market Listing. Similar location, style, size and condition as subject. This is over one mile, there are limited comparisons. No garage. This has a fenced yard. This has security system. Remodeled kitchen and bath.

\* Listing 2 is the most comparable listing to the subject.
¹ Comp's "Miles to Subject" was calculated by the system.
² Comp's "Miles to Subject" provided by Real Estate Professional.

## V. Recent Sales

| | Subject | Sold 1 | Sold 2 * | Sold 3 |
|---|---|---|---|---|
| Street Address | 45 Greenleaf St | 13 Keith St. | 98 Donlyn Dr | 56 Marion St |
| City, State | Chicopee, MA | Chicopee, MA | Chicopee, MA | Chicopee, MA |
| Zip Code | 01013 | 01020 | 01013 | 01013 |
| Datasource | Tax Records | MLS | MLS | MLS |
| Miles to Subj. | -- | 1.94 [1] | 0.25 [1] | 0.17 [1] |
| List Price $ | -- | $159,900 | $164,900 | $169,900 |
| Sale Price $ | -- | $150,000 | $170,000 | $170,000 |
| Type of Financing | -- | Conv | Conv | Conv |
| Date of Sale | -- | 09/26/2017 | 06/30/2017 | 08/18/2017 |
| DOM · Cumulative DOM | -- · -- | 36 · 89 | 2 · 73 | 44 · 94 |
| Original List Price $ | -- | $163,900 | $164,900 | $174,900 |
| Age (# of years) | 66 | 88 | 61 | 39 |
| Condition | Average | Average | Average | Average |
| Sales Type | | Fair Market Value | Fair Market Value | Fair Market Value |
| Style/Design | 1 Story ranch | 1 Story ranch | 1 Story ranch | 1 Story ranch |
| # Units | 1 | 1 | 1 | 1 |
| Living Sq. Feet | 779 | 768 | 1,026 | 1,008 |
| Bdrm · Bths · ½ Bths | 2 · 1 | 2 · 1 | 2 · 1 · 1 | 3 · 1 |
| Total Room # | 4 | 5 | 4 | 5 |
| Garage (Style/Stalls) | Detached 1 Car | Detached 1 Car | Detached 2 Car(s) | Detached 1 Car |
| Basement (Yes/No) | Yes | Yes | Yes | Yes |
| Basement (% Fin) | 0% | 0% | 0% | 0% |
| Basement Sq. Ft. | 779 | 768 | 1,026 | 1,008 |
| Pool/Spa | -- | -- | -- | -- |
| Lot Size | 0.12 acres | 25 acres | .18 acres | .22 acres |
| Other | none | porch, patio | porch, patio | none |
| Adjustment | -- | -$2,000 | -$11,600 | -$3,000 |
| Adjusted Price | -- | $148,000 | $158,400 | $167,000 |

**Reasons for Adjustments** Why the comparable sale is superior or inferior to the subject.

**Sold 1** Fair Market Sale. Similar location, style, size and condition as subject. This is over one mile, there are limited comparisons. Adj: Porch -1000 Patio -1000

**Sold 2** Fair Market Sale. Similar location, style, size and condition as subject. This is over 3 months sold , there are limited comparisons. Adj: Sales conc -5100 One car gar -2000 Porch -1000 Patio -1000 Living area -2000 Baths -500

**Sold 3** Fair Market Sale. Similar location, style, size and condition as subject. This is in very close proximity to the subject. Adj: Living area -3000.

\* Sold 2 is the most comparable sale to the subject.
[1] Comp's "Miles to Subject" was calculated by the system.
[2] Comp's "Miles to Subject" provided by Real Estate Professional.

## VI. Value Conclusion

| | As Is | Repaired |
|---|---|---|
| Suggested List | $152,900 | $152,900 |
| Final Value Conclusion | $150,000 | $150,000 |
| 30 Day Value | $140,000 | |
| Land Value | $40,000 | |
| Estimated Monthly Rent | $1,000 | |

**Value Conclusion/Summary of Analysis**

I had to expand my search to larger properties  there are very limited comparisons the same size as the subject. I had to expand my search to various styles to find similar homes. I had to expand my search to over one mile to find similar homes.

## VII. Clear Capital Quality Assurance Comments Addendum

**Reviewer's Notes**    The report is well supported. The broker has supplied good comps considering the market area and comp availability.

## VIII. Property Images

| Address | 45 Greenleaf St, Chicopee, MA 01013 | | | |
|---|---|---|---|---|
| Loan Number | ███████ | Suggested List As Is $152,900 | Suggested List Repaired $152,900 | As Is Value $150,000 |



**Subject**   45 Greenleaf St          **View**   Address Verification



**Subject**   45 Greenleaf St          **View**   Front

VIII. Property Images (continued)

| | |
|---|---|
| **Address** | 45 Greenleaf St, Chicopee, MA 01013 |
| **Loan Number** | ▆▆▆▆    Suggested List As Is  $152,900    Suggested List Repaired  $152,900    As Is Value  $150,000 |



**Subject**  45 Greenleaf St                    **View**  Side



**Subject**  45 Greenleaf St                    **View**  Side

**VIII. Property Images (continued)**

| | |
|---|---|
| **Address** | 45 Greenleaf St, Chicopee, MA 01013 |
| **Loan Number** ▮▮▮▮ | **Suggested List As Is** $152,900    **Suggested List Repaired** $152,900    **As Is Value** $150,000 |



**Subject**   45 Greenleaf St          **View**   Side



**Subject**   45 Greenleaf St          **View**   Street

**VIII. Property Images (continued)**

| Address | 45 Greenleaf St, Chicopee, MA 01013 | | |
|---|---|---|---|
| Loan Number | Suggested List As Is $152,900 | Suggested List Repaired $152,900 | As Is Value $150,000 |



2017.10.05 07:14

**Subject** 45 Greenleaf St          **View** Street



**Listing Comp 1** 460 East St.          **View** Front

### VIII. Property Images (continued)

**Address**    45 Greenleaf St, Chicopee, MA 01013
**Loan Number** ████████    **Suggested List As Is** $152,900     **Suggested List Repaired** $152,900     **As Is Value** $150,000



**Listing Comp 2**    93 Wildermere St     **View**   Front



**Listing Comp 3**    46 Thornwood St     **View**   Front

## VIII. Property Images (continued)

**Address**   45 Greenleaf St. Chicopee, MA 01013
**Loan Number** ▮▮▮▮▮▮▮   **Suggested List As Is** $152,900   **Suggested List Repaired** $152,900   **As Is Value** $150,000



**Sold Comp 1**   13 Keith St.   **View** Front



**Sold Comp 2**   98 Donlyn Dr   **View** Front

**VIII. Property Images (continued)**

| Address | 45 Greenleaf St. Chicopee, MA 01013 | | |
|---|---|---|---|
| Loan Number ████ | Suggested List As Is $152,900 | Suggested List Repaired $152,900 | As Is Value $150,000 |



**Sold Comp 3**    56marion St          **View**    Front

**ClearMaps Addendum**

**Address** ☆ 45 Greenleaf St, Chicopee, MA 01013
**Loan Number**
**Suggested List As Is** $152,900        **Suggested List Repaired** $152,900        **As Is Value** $150,000



SUBJECT: 45 Greenleaf St, Chicopee, MA 01013

©2017 ClearCapital.com, Inc.        ©2017 MapQuest © TomTom © Mapbox

| Comparable | | Address | Miles to Subject | Mapping Accuracy |
|---|---|---|---|---|
| ★ | Subject | 45 Greenleaf St, Chicopee, MA | -- | Parcel Match |
| L1 | Listing 1 | 460 East St., Chicopee, MA | 1.88 Miles [1] | Parcel Match |
| L2 | Listing 2 | 93 Wildermere St, Chicopee, MA | 2 00 Miles [1] | Street Centerline Match |
| L3 | Listing 3 | 46 Thornwood St, Chicopee, MA | 1.20 Miles [1] | Parcel Match |
| S1 | Sold 1 | 13 Keith St., Chicopee, MA | 1 94 Miles [1] | Street Centerline Match |
| S2 | Sold 2 | 98 Donlyn Dr, Chicopee, MA | 0.25 Miles [1] | Parcel Match |
| S3 | Sold 3 | 56 Marion St, Chicopee, MA | 0 17 Miles [1] | Parcel Match |

[1] The Comparable "Distance from Subject" value has been calculated by the Clear Capital system.
[2] The Comparable "Distance from Subject" value has been provided by the Real Estate Professional.

**Addendum: Report Purpose**

## Market Approach and Market Time

Except as specifically indicated herein, the Market Approach of this report, as established by the customer, is. **Market Value**. (See definition below.)

The Exposure Time as specified by the customer is **Typical**. (See definition below.)

| | |
|---|---|
| Definitions: | |
| Market Value | The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition are the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:<br>• Buyer and seller are typically motivated;<br>• Both parties are well informed or well advised, and acting in what they consider their own best interests;<br>• A reasonable time is allowed for exposure in the open market;<br>• Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and<br>• The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale. |
| Distressed Value | A price at which the property would sell between a willing buyer and a seller acting under duress. |
| Exposure Time | The amount of time the property is exposed to a pool of prospective buyers before going into contract. The customer either specifies the number of days, requests a marketing time that is typical to the subject's market area and/or requests an abbreviated marketing time. |
| Typical for Local Market | The estimated time required to adequately expose the subject property to the market resulting in a contract of sale. |

## Report Instructions

This section shows the instructions that were approved by the customer and provided to the broker prior to completing the report.

Instructions last updated: 7/12/2017

Purpose:

Please determine a realistic market value for this property at which it would sell in a typical marketing time for the area.

Customer Specific Requests:

1. If your inspection reveals that subject has had major damage (fire, flood, hurricane, etc), please upload your photos and immediately call Clear Capital Quality Assurance. We will alert the client and determine how to proceed.

2. If the subject is a Multi-family property the following information is requested:

• A breakdown of each unit's bedroom and bathroom count (as available).
• Rental rate estimates for the subject's unit.
• Rental information for the sales and listing comps (as available).

3. If the property is considered primarily commercial and has no or only incidental residential use, please upload the subject photos and contact Clear Capital at 530-582-5011 for direction on how to proceed with the report.
4. Repair costs should only reflect the cost to cure damages and bring the subject up to average marketable condition. However, please avoid cosmetic items or updates, focusing solely on damaged items.
5. Please ensure the subject's listing data in section II is up to date and filled out to the best of your ability. Our mutual customer wants as much of the subject's listing history as possible. Please comment on any relevant listing data that impacts your report.

As-Is 120 Day Value:

1. This client requires an "As-Is" value conclusion on this form based on a 120 day marketing time. If you determine "typical marketing time" for the subject is 120 days, then the client's imposed marketing time aligns with the definition of "Market Value" already included in your report.

2. However, if you determine that the subject's "typical marketing time" is not 120 days, please include a PROMINENT disclosure in your report explaining this. For example,

3. "Per the client's requirement, the value conclusion herein is predicated on a client imposed marketing time of 120 days, which is outside the "typical marketing time" for the subject property. As such, the pre-printed definition of "Market Value" in this report is not valid. The actual value conclusion presented herein reflects a *XXXXX value conclusion."

4. (Where *XXXXX may reflect another definition, such as "liquidation value" if you determine typical marketing time exceeds 120 days, for example).

Comparable Requirements:

If any of the following comparable criteria cannot be met, commentary is required as to why you expanded your search, and what the effect on value will be.

1. Please provide at least one (1) current listing and one (1) closed sale indicative of the subject property's "as-repaired" condition. Also provide at least one (1) current listing and one (1) closed sale indicative of the subject property's "as-is" condition.
2. Use comps from the same neighborhood, block or subdivision.
3. Use REO comparables only if the market is driven by REOs and they are comparable in characteristics and condition.
4. Use comps that have closed in the past 3 months to show the current market conditions. In rapidly changing markets, active listing comps should be given equal or greater weight than sold comps in your analysis.

Property Condition Definitions:

1. Poor: Uninhabitable or severely damaged from fire, flood, vandalism or mold
2. Fair: Repairs needed, may not be eligible for all forms of financing, below the neighborhood average
3. Average: Minor cosmetic or no repairs needed; typical for the neighborhood, move-in ready but no significant updates or renovations
4. Good: Above average, move in ready, no repairs necessary and has recent and significant updates and/or renovations (or, for customers that do not provide for 'Average', any move-in ready property)
5. Excellent: Newer construction (1-5 years) or high end luxury property

Standard Instructions:

1. Clear Capital Code Of Conduct - Please make sure that you are always abiding by the Clear Capital Code of Conduct when completing valuation reports.

2. If the subject is currently listed, please consider all available information pertaining to the subject's condition. This information should be utilized when developing the assumption of the subject's condition.
3. Use the subject characteristics provided in the report Grid (if preloaded) to evaluate the property. This information is from a full interior appraisal and is assumed to be most accurate. If your inspection reveals obvious inaccuracies, please explain in the narrative of the report.
4. Include sufficient detail to help our mutual customer gain a complete understanding of the subject's neighborhood such as neighborhood desirability, amenities, parks, schools, commercial or industrial influences, REO activity, traffic, board-up-homes, etc.
5. Do not approach occupants or owners.
6 If the subject is a Commercial property, contact Clear Capital immediately at 530-582-5011 for direction on how to proceed with the report.
7. Please do not accept if you or your office has completed a report on this property in the last month, are currently listing this property, or have any vested interest in the subject property.
8. Clear Capital does not allow any log ins from IP addresses from foreign countries. This includes, but is not limited to; data entry services, form completion services, etc. Also, it is against Clear Capital code of conduct to share your password with anyone who is not a W2 employee in your office.

9. Clear Capital and our mutual customers greatly appreciate your expertise. If you cannot personally inspect the property, select comparables, and determine a price for the subject, please do not accept this report. Per the standards and guidelines adopted by Clear Capital and other industry leaders, the use of assistants to complete any of the aforementioned tasks is not permitted.

Due to the importance of an independent opinion of price, please do not discuss your price with anyone or be influenced by list price, pending offers, accept comp packets, repair estimates or the listing agent's opinion.

Properties in Puerto Rico:

It is required that you have access to the following data sources and include the data sheets (full sheets including photos) for the subject as well as all listing and sold comps, from these sources used in the report. If you do not have access to these systems, please contact Clear Capital right away:

- Clasificadosonline.com
- www.luisabreu.com
- www.tasamax.com

Please provide detailed commentary and the data sheets, if other sources were used. The commentary should explain why one of the listed sources was not used in the comparable search.

*This client requests timestamps on photos whenever possible.*
1. One current, original photo of the front of the subject
2. Damages (upload enough photos to support your repair cost estimates)
3. Two street scene photos, one looking each direction down the street
4. One view photo looking across the street from the subject
5. One address verification photo
6. Labeled MLS Listing and Sold Comp photos showing the full front view of the property are required. Please take original photos of the comps if MLS photos are thumbnail size, unavailable, or do not show a full front view of the property.
7. Photos of any reported external influences/amenities considered within the report.

## Broker Information

| | | | |
|---|---|---|---|
| **Broker Name** | Lori Hanson | **Company/Brokerage** | Coldwell Banker Residential Brokerage |
| **License No** | [redacted] | **Electronic Signature** | /Lori Hanson/ |
| **License Expiration** | | **License State** | MA |
| **Phone** | 4133353222 | **Email** | [redacted] |
| | | **Date Signed** | 10/05/2017 |

*By confirming the above contact and real estate license information and submitting the report, the above signed hereby certifies and agrees that: 1) I personally took the pictures selected comparables and determined the price conclusion. 2) To the best of my knowledge, the statements of fact contained in this report are true and correct. 3) The reported analyses, opinions, and conclusions are my personal, impartial and unbiased professional analyses opinions and conclusions 4) I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved 5) I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment. 6) My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined price point 7) I did not base either partially or completely my analysis and/or opinion and conclusions in this report on race, color religion, sex, age, marital status, handicap familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law 8) I maintain errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of this Valuation Report.*

## Disclaimer

**This document is not an appraisal as defined by USPAP (Uniform Standards of Professional Appraisal Practice). It is not to be construed as an appraisal and may not be used as such for any purpose.**

**The intended use of this opinion of value is to assist with mortgage due diligence and decision-making processes.**

**Unless otherwise specifically agreed to in writing:**
**The intended purpose of this report is to assist the Clear Capital account holder in making decisions within the scope of applicable statutory and regulatory requirements and performing required due diligence. This document is provided solely for the use of the Clear Capital account holder and not any other party, is not intended as any guarantee of value and/or condition of the subject property and should not be relied on as such. In the event that this document is found to be defective, incorrect, negligently prepared or unfit for its authorized use, Clear Capital's sole liability shall be to promptly refund the total fee expended by the account holder for this report or to replace it at no charge to the account holder, but in no event shall Clear Capital be responsible to the account holder for any indirect or consequential damages whatsoever. This warranty is in lieu of all other warranties, express or implied, except where otherwise required by law. The account holder shall notify Clear Capital within thirty (30) days of this report's delivery to the account holder if it believes that this document is defective, incorrect, negligently prepared or unfit for its authorized use. Under no circumstances may Clear Capital forms or their contents be published, copied, replicated, or mimicked.**

© 2017 ClearCapital.com, Inc.